John P. Kelly

*v.*

State of Tennessee.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

Lyle Burrow, Bristol, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

The defendant was brought to trial in the Criminal Court of Sullivan County upon a two count indictment. The first count charged that he "did unlawfully and feloniously break and enter Medical Pharmacy Center, a business house, in the night time with the intent to com-

mit a felony therein to-wit: larceny of $1,000 in money and narcotics valued at $2,000" etc.; the second count charges him with feloniously receiving and concealing the same property of the Medical Pharmacy Center. He was convicted and sentenced to the penitentiary for three (3) years under each count, the same to run concurrently.

A motion for a new trial was seasonably made and overruled. The case is now before us upon assignments of error, as follows:

(1) There is no evidence to support the verdict.

(2) "There is no evidence of venue. No crime was ever proved to have been committed in Sullivan County, Tennessee."

(3) "The Court erred in allowing the witness George Osteen to testify, over the objection of defendant, as to the drugs found in defendant's house. This was error because no search warrant was produced and the search was made in violation of the defendant's constitutional rights.

"The court erred in allowing the witness, James Thomas, to testify, over defendant's objection, as to drugs found in defendant's home. This was error because the search was made in violation of defendant's constitutional rights. The burden being on the State to show that a legal search was made."

We consider it inadvisable to discuss the merits of the first assignment of error since the case must be remanded for a new trial due to the failure of the State to prove that the crime laid in the indictment was committed in Sullivan County, Tennessee.

During the trial of the case, and particularly on the defendant's motion for a new trial, the question of venue was made and overruled. It is again urged upon us in the second assignment.

That the Medical Pharmacy Center was burglarized and property stolen therefrom on November 6, 1955 is not made an issue on this appeal. It is conclusively established by competent evidence. But there is no evidence whatever that the Medical Pharmacy Center is in Sullivan County, Tennessee. The only proof relating to venue is that this Medical Pharmacy Center was in Bristol. The witnesses refer to the location of the place as in Bristol, without a suggestion that Bristol is in the State of Tennessee, or in Sullivan County, Tennessee. Now we feel justified in observing that the City of Bristol is on the line separating the states of Tennessee and Virginia.

Section 9, Article 1, of our Constitution provides for "a speedy public trial, *by an impartial jury of the County in which the crime shall have been committed,* and shall not be compelled to give evidence against himself." (Emphasis ours.)

In *State v. Denton,* 46 Tenn. 539, it is held that a prisoner's right to be tried in the county where the offense is alleged to have been committed is secured to him by the Constitution, and *"he cannot in any case be deprived of that right without his consent".* In *Franklin v. State,* 64 Tenn. 613, it is said: "The proof of venue *must not be left to inference or construction."* (Emphasis supplied.)

We readily concede that venue may be shown by circumstantial evidence, *Ford v. State,* 184 Tenn. 443, 201

S.W.2d 539, and by the preponderance of the evidence (not beyond a reasonable doubt), *Gilliland v. State*, 187 Tenn. 592, 216 S.W. 2d 323, and cases cited.

In Underhill's Criminal Evidence, 5th Ed., Sec. 95, it is said: "No prescribed formula is required to establish venue, the same being satisfactorily shown if it appears from the record as a whole, * * * If, however, the crime is shown to have been committed in, or very near, a certain town, village, or other minor territorial subdivision, it is not necessary to prove that this minor division is in the county. * * * The jury, as a part of the court, are bound to take notice of general geographical facts."

The foregoing text is supported by the great weight of authority as appears from the many cases cited by the author. But all the authorities are substantially in accord with the general principle that the proof must show to the satisfaction of the court and jury that the crime was committed in the county where the indictment was found and where the accused was brought to trial. This is the express requirement of the Constitution to which we have made reference. It is further stated in Underhill (Sec. 95), "Evidence though slight, *if not conflicting*, is sufficient to prove venue, but the venue *should not be left in doubt or proved by reference when it may easily be proved*." (Emphasis supplied.)

While giving our approval to the quoted text from Underhill, we hold it would apply to the instant case only if there was proof that "Medical Pharmacy Center" was in Bristol, Tennessee. The jury could only take notice of the "geographical fact" that half of the Town of Bristol is in Virginia and the other half in Sullivan County, Tennessee. The location of the Medical Pharmacy Center

in a particular section of the city, the *locus in quo,* (necessary to establish venue), is not a "geographical fact" of which the jury was bound to take notice.

The second assignment of error is sustained.

The third assignment of error raises the question of the illegal search of the home of the defendant on the ground that Osteen and Thomas, Deputy Sheriffs from Oak Ridge, Tennessee, searched the home in Dalton, Georgia, without a warrant. The evidence shows without doubt that they exhibited no warrant of any kind. When they arrived in Dalton, Georgia, with a Tennessee State warrant (and this was the only authority they ever had), they went to the home of the defendant Kelly about midnight. According to the testimony of Osteen and Thomas the defendant accompanied them, at their request, to police headquarters for interrogation. Whether or not he was under arrest at this time the record is silent. The defendant did not testify. While at police headquarters they testified that Kelly phoned his wife to let them search the house. It was the insistence of the State that the search was with Kelly's consent. These officers stated to Kelly they had a search warrant but, as above stated, none was exhibited either to Kelly or his wife. Of course, if the search was made with the consent of the defendant it was not necessary to have a search warrant. Mrs. Kelly did not testify in the case.

In the present state of the record we express no opinion as to whether the search of defendant's home was legal or illegal.

The case is reversed and remanded for a new trial.